**Rafael Alberto FERRARO and Maria Luisa Ferraro, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 825, Docket 75–4225.**

United States Court of Appeals, Second Circuit.

Argued March 16, 1976.

Decided May 17, 1976.

---

Stanley H. Wallenstein, Schiano & Wallenstein, New York City, for petitioners.

Mary P. Maguire, Special Asst. U. S. Atty. (Robert B. Fiske, Jr., U. S. Atty., Thomas H. Belote, Special Asst. U. S. Atty.), New York City, for respondent.

Before MULLIGAN and GURFEIN, Circuit Judges, and WYZANSKI, Senior District Judge *.

WYZANSKI, Senior District Judge:

This is a petition to review an order, entered June 12, 1975, by the Board of Immigration Appeals deporting two aliens. That order affirmed an Immigration Judge's finding that the petitioners were deportable for having made an entry into the United States without inspection, and his order granting them voluntary departure in lieu of deportation. In his opinion, the Immigration Judge, without deciding the issue, but citing *Matter of Romero-Uranga*, INS File # A–10 553 849 (decided June 8, 1965) and *Matter of Gutierrez-Lavin*, INS File # 8–A 405 405

(decided June 11, 1965), suggested that, inasmuch as petitioners before their surreptitious entry had enjoyed for several years lawful permanent resident status, they should be given back their form I–151 and permitted to leave the country and to return, after being properly inspected, to resume their lawful permanent resident status. He did not, however, include the suggestion in his order. That point was not averted to by the Board in its two-paragraph opinion accompanying its order of affirmance, and apparently the Immigration and Naturalization Service has not returned their identification cards to the petitioners.

The sole issue is whether this Court should remand the case to the Board to determine whether petitioners forfeited their lawful permanent resident status on the ground of their entry without inspection. If we assume, *arguendo*, that they did not forfeit their status, there are still two questions.

Underlying that issue, the two questions are: first, whether a correct interpretation of the immigration statutes gives the Board discretion to permit the petitioners, under the particular circumstances, to maintain their lawful permanent residence status, and second, if so, whether the Board in the exercise of its discretion, will give permission.[1]

 In view of the two 1965 matters previously mentioned, it appears to us that the first of the two questions is one which ought initially to be considered by the Board. It is a familiar principle that, while questions of law involved in statutory interpretation are ultimately to be decided by courts, the courts in reviewing orders of administrative agencies charged with application of statutes regulating particular areas of control sometimes defer in doubtful

---

* Senior District Judge of the District of Massachusetts, sitting by designation.

1. The ultimate question is whether the aliens who had a lawful residence here and left for a short trip to Canada which would normally not affect their status as resident aliens, *Rosenberg v. Fleuti*, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963), have forfeited the status and rendered themselves deportable because they re-entered the United States without inspection. We have been cited no case where a federal court has considered the question of whether an entry without inspection *per se* destroyed a resident alien status.

cases to the views of the agency in the light of its presumed special experience and its supposed competence resulting from familiarity with the area. *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–434, 91 S.Ct. 849, 854–855, 28 L.Ed.2d 158, 165–166 (1971); *Texas Gas Transmission Corp. v. Shell Oil Co.*, 363 U.S. 263, 80 S.Ct. 1122, 4 L.Ed.2d 1208 (1960); *NLRB v. Hearst Publications Inc.*, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944). We believe that, particularly in the light of the two 1965 matters, this is a case for invocation of that principle. The Board ought to have the opportunity to express, before we do, a view as to what the statutes allow. And if the Board should conclude that the statutes give discretion to the Board, the Board should then determine how to exercise that discretion. Out of an abundance of caution, we add that on neither of those questions do we now intimate any view of our own, nor if the decision gives adequate relief to petitioners will we have to decide whether they are deportable.

Remanded to the Board to make findings in accordance with this opinion.